UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| In Re: SAINT CATHERINE HOSPITAL OF INDIANA, LLC, | ) ) ) |
| INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, | ) ) ) |
| Appellant, | ) ) ) |
| vs. | ) ) ) ) ) |
| SAINT CATHERINE HOSPITAL OF INDIANA, LLC, | ) ) ) |
| Appellee. | ) |

No. 4:13-cv-00183-SEB-WGH

## ORDER ON BANKRUPTCY APPEAL

This cause is before the Court on appeal from the decision of the United States Bankruptcy Court for the Southern District of Indiana, which entered summary judgment for Appellee Saint Catherine on September 19, 2013. For the reasons set forth below, the decision of the bankruptcy court is AFFIRMED in part and REVERSED in part.

### Factual and Procedural Background

#### Facts

The facts of this case, as the Bankruptcy Judge noted, are undisputed by the parties. Docket No. 21 at 6.[1] Appellee Saint Catherine Hospital of Indiana ("Saint Catherine") is a regional health care facility in Charlestown, Indiana. The hospital is classified as a general acute

---
[1] Citations to the "Docket" refer to the docket of the Bankruptcy Court case, *Saint Catherine Hospital of Indiana, LLC v. Indiana Family and Social Services Administration,* A.P. No. 13-59010.

care facility that treats some Medicaid patients; according to the testimony of its President and CEO Merlyn Knapp, however, Saint Catherine specializes in senior care, and the majority of its patients are insured through Medicare. Docket No. 19 at 4–5. Like other hospitals in the state, Saint Catherine receives reimbursement from the state and federal governments for its treatment of Medicaid patients; the United States Department of Health and Human Services Center for Medicare and Medicaid Services (CMS) provides two dollars of funding for every one dollar provided by the state government. Appellee's Br. 4. Appellant Indiana Family and Social Services Administration ("FSSA") administers Indiana's Medicaid Program.

On April 29, 2011, the Indiana General Assembly adopted Public Law 229, 2011, Section 281 ("Section 281"), a measure designed to facilitate increased reimbursement for hospital care to Medicaid patients, to be paid for by an assessment known as the Hospital Assessment Fee ("HAF") levied on Indiana hospitals. Appellant's Br. 3. A committee appointed by the legislature determined that the total HAF fund must reach $559,100,000 for inpatient services and $87,676,084 for outpatient services. *See* Docket No. 26 at 2. Each individual hospital's share of the fee was determined by an Indianapolis auditing firm on a pro rata basis, employing a hospital's patient data from the period May 1, 2010 through April 30, 2011. Docket No. 39 at 11. The "fee period" for the assessment on hospitals spanned from July 1, 2011 to June 30, 2013 (fiscal years 2012 and 2013), but collection of the HAF for fiscal year 2012 was delayed until the program received the required approval from the U.S. Department of Health and Human Services. The federal government issued its approval on May 21, 2012; thereafter FSSA began assessing the HAF on hospitals, retroactively dated to July 1, 2011. *See* Docket No. 26 Ex. A; Docket No. 29 at 3. On May 22, 2012, FSSA issued Provider Bulletin BT201217, which

informed Indiana hospitals of the HAF collection process and announced the timeline that would govern the assessments and FSSA's collection methods. *See* Docket No. 26 Ex. B.[2]

As an acute care hospital serving Medicaid patients pursuant to Indiana Code § 16-21-2, Saint Catherine was eligible for HAF assessments. The committee determined that Saint Catherine owed $1,107,038.51 for fiscal year 2012, and roughly the same amount for fiscal year 2013. *See* Appellant's Br. 4 (citing Docket No. 1 Ex. 1). FSSA sent Saint Catherine the bill for its fiscal year 2012 HAF on May 29, 2012. Docket No. 1 at ¶ 10. Shortly thereafter, FSSA commenced withholdings from its Medicaid reimbursements to Saint Catherine in order to recover the approximately $1.1 Million that Saint Catherine owed retroactive to July 1, 2011. On June 5 and June 12, 2012, FSSA withheld from Saint Catherine a total of $781,041.30. Docket No. 12 (Joint Pre-Trial Statement) at 6, ¶¶ 10–11. FSSA subsequently remitted a portion of this amount, leaving the total net withholdings on June 5 and June 12 at $615, 912.64.[3]

Saint Catherine filed for Chapter 11 bankruptcy protection on June 19, 2012. FSSA continued its withholdings in service of the fiscal year 2012 HAF debt for two more weeks: it withheld $53,470.57 on June 19 and $105,582.67 on June 26. Docket No. 29 at 4. The withholdings for the 2012 HAF that occurred after Saint Catherine petitioned for bankruptcy thus totaled $159,053.24. *Id.*

On July 28, 2012, FSSA issued Saint Catherine its $1,127,296.44 HAF for fiscal year 2013—a period spanning July 1, 2012 to June 30, 2013. Appellant's Br. 5. Saint Catherine did not pay the fee during fiscal year 2012, and after July 1, 2013, FSSA began withholding sums from its regular Medicaid reimbursements in satisfaction of this debt. All told, FSSA withheld

---

[2] Pursuant to its 2006 Provider Agreement with the State, Saint Catherine is obliged to comply with Provider Bulletins issued by FSSA. *See* Docket No. 26 Ex. C.

[3] FSSA returned $53,240.21 on June 13, 2012, and $111,888.45 on August 14, 2012. There is a dispute between the parties as to whether the August 14 remittance was credited against the June 5/12 pre-petition withholdings or the later post-petition withholdings. *See* Docket No. 29 at 4. Because our treatment of this amount is the same regardless of which "basket" it is placed into, we need not resolve the dispute.

$989,738.78 in satisfaction of the fiscal year 2013 HAF; all of these withholdings were made after Saint Catherine had filed its bankruptcy petition. Docket No. 29 at 5.

**Procedural History**

Saint Catherine filed an Adversary Complaint against FSSA on March 14, 2013, seeking an injunction against further collection of the HAF and recovery of sums withheld by FSSA both before and after the Chapter 11 bankruptcy position. After oral argument, Bankruptcy Judge Basil H. Lorch III of our court granted Saint Catherine's motion for a preliminary injunction and issued an order enforcing the automatic post-petition stay. *See* Docket No. 21. Saint Catherine then moved for summary judgment on July 5, 2013, seeking recovery of the $615,912.64 withheld by FSSA before its bankruptcy petition in service of the fiscal year 2012 HAF, the $159,053.24 withheld in service of the fiscal year 2012 HAF after the bankruptcy petition, and the $989,738.78 withheld post-petition in service of the fiscal year 2013 HAF. Appellant's Br. 2.

On September 19, 2013, the Bankruptcy Court granted Saint Catherine summary judgment on all of its claims. *See* Docket No. 29. The Court ruled that the pre-petition withholdings constituted preference payments under 11 U.S.C. § 547 and were not subject to the exemption for payments made in the "ordinary course of business." Docket No. 29 at 6–7. As to the post-petition withholdings, the Court concluded that all of them—for the 2012 and 2013 HAFs alike—constituted "act[s] to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" pursuant to 11 U.S.C. § 362(a)(6). *Id.* at 9. Lastly, the Court rejected FSSA's argument that the post-petition withholdings were "recoupment" exempt from the operation of Section 362's automatic stay, and it ordered FSSA to repay Saint Catherine the full amount it had withheld. *Id.* at 10–11. FSSA filed a timely notice of appeal from the Bankruptcy Court's final judgment on October 3, 2013. Docket No. 30.

## Legal Analysis

### Standard of Review

This Court has power to review the final judgment of the United States Bankruptcy Court for the Southern District of Indiana pursuant to 28 U.S.C. § 158(a)(1). We review the legal conclusions reached by the Bankruptcy Court *de novo*. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010); *In re Midway Airlines, Inc.*, 69 F.3d 792, 795 (7th Cir. 1995). As both parties concede, there are no material facts in dispute; we therefore examine the issues of law presented without deference. *See* Appellant's Br. 1; Appellee's Resp. 3.

### Discussion

FSSA challenges the decision of the Bankruptcy Court in three respects. First, it contends that the court erred in its conclusion that FSSA's pre-petition withholding of Medicaid reimbursements to satisfy the HAF was not in the "ordinary course of business" and thus exempt from the ordinary treatment of preference payments. Appellant's Br. 5–10. Second, it argues that the 2012 HAF and the 2013 HAF constitute separate "claims," and that the 2013 withholding is therefore the collection of a post-petition debt and not subject to the automatic stay under the bankruptcy statute. *Id.* at 18–20. Lastly, FSSA maintains that its method of withholding Saint Catherine's HAF debts from Medicaid reimbursements is a form of recoupment justified by equitable principles and exempt from the restrictions Chapter 11 imposes on the collection of pre-petition debts. *Id.* at 10–17.

As Judge Lorch noted in hearings conducted before the Bankruptcy Court, the resolution of all three of these questions depends in large part on how we conceptualize the Hospital Assessment Fee (HAF)—a financial obligation imposed on Indiana hospitals that fits uneasily within the bankruptcy system's categorization of debts. In FSSA's telling, the HAF is merely

5

another addition to the lengthy running account of payments that exists between the agency and the state's hospitals. "Medicaid transactions, *like the HAF,* have transpired between FSSA and Saint Catherine since Saint Catherine became an acute care hospital." Appellant's Br. 8 (emphasis added). In support of this characterization, FSSA points out that it accounted for Saint Catherine's HAF debt in the same way it would account for an "ordinary" Medicaid debt like a past claim-specific overpayment: by withholding from a subsequent reimbursement to redress the balance. *Id.* at 8–9. FSSA portrays the HAF as a measure that increased the magnitude of the regular exchange of money between the state and Saint Catherine, but did not represent a fundamental departure from their pre-existing relationship; the hospital paid a fee in exchange for receiving a higher rate of Medicaid reimbursement. *See* Appellant's Reply 7; Docket No. 39 at 9.

In contrast, Saint Catherine views the HAF as a one-off obligation, a departure from the existing financial relationship between the hospital and the state. "[T]he HAF and Medicaid are distinct. Saint Catherine owes the HAF not because of Medicaid services it provides, but because it is an acute care hospital." Appellee's Resp. 12. According to Saint Catherine, then, the HAF is akin to a tax, and it is levied on all eligible hospitals in order to fund a statewide policy effort; it is different from the ordinary bilateral relationship between the hospital and the state in both kind and degree.

We agree with Saint Catherine and the Bankruptcy Court that it is inappropriate to consider the HAF of a piece with the hospital's pre-existing obligations to FSSA. The legislation authorizing the HAF describes it as an assessment to be levied over two years, aimed toward the statewide policy goal of obtaining payments for Medicaid inpatient and outpatient service "equivalent to the level of reimbursement that would be paid under federal Medicare payment

principles." Public Law 229-2011, § 281(f); Docket No. 24 Ex. 1. At a hearing before the Bankruptcy Court, FSSA chief financial officer Paul Bowling acknowledged that Section 281, which authorized the HAF, stood apart from the "regular pay for service" arrangement, *See* Docket No. 39 at 48–49; in its briefing, FSSA recognizes that Saint Catherine's HAF obligation arose not out of any specific conduct or transaction between the hospital and the agency, but rather was triggered by Saint Catherine's status as an acute care hospital. Appellant's Br. 4. Although Saint Catherine will enjoy the benefits of the increased reimbursement rates instituted by Section 281 over time, the 2012 fee was frontloaded in a way that rendered it akin to a tax— FSSA's withholdings in the period in question wholly erased Saint Catherine's reimbursements, the increased rate of reimbursement notwithstanding. Docket No. 39 at 49–51.

Furthermore, the long-term net effect of the HAF on any particular hospital is uncertain. Although FSSA's actuarial contractor attempted to tailor the assessment amount to a hospital's past patient profile, some redistributive effects are inevitable, and increased reimbursements may never fully compensate for the 2012 and 2013 HAF levies. *See* Docket No. 29 at 10 (noting that the 2012 HAF amount owed by Saint Catherine would remain the same regardless of how many Medicaid patients it treated going forward). FSSA has undoubtedly chosen to collect the HAF from hospitals by grafting it on to its existing methods of reconciling running accounts with the state's hospitals, *see* Docket No. 24 Ex. 2, but we conclude that the HAF must be viewed on its own terms, as a form of debt whose bankruptcy implications may differ from the law's typical treatment of a hospital's Medicaid obligations.

It is in light of this analysis that we review, in turn, FSSA's three challenges to the Bankruptcy Court's conclusions of law.

**I.       The pre-petition withholdings**

FSSA challenges the Bankruptcy Court's ruling that Saint Catherine, as debtor-in-possession under Chapter 11, may avoid the withholdings made by FSSA on June 5 and June 12, 2012, shortly before the hospital filed for bankruptcy. *See* Docket No. 29 at 5–6. Specifically, FSSA argues that the withholdings were conducted in the "ordinary course of business," and thus cannot be avoided by the debtor.[4] We affirm this holding of the Bankruptcy Court.

Title 11, United States Code Section 547 provides that the trustee of a debtor in bankruptcy may "avoid any transfer of an interest of the debtor in property" to a creditor that occurs when the debtor is insolvent and within 90 days before the filing of the petition.[5] 11 U.S.C. § 547. An exception to the general rule regarding "preference payments" does exist, however: payments otherwise avoidable may stand if they were incurred in the "ordinary course of business." 11 U.S.C. § 547(c)(2). As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109–8, Congress simplified the test for the ordinary course of business exception into a two-pronged one. *See In re National Gas Distributors, LLC*, 346 B.R. 394, 400–401 (Bankr. E.D.N.C. 2006) (explaining the impact of the legislation). The exception applies if the debt itself was incurred in the ordinary course of business of the two parties, and if the transfer at issue was made either (1) "in the ordinary course of business or financial affairs of the debtor *and* the transferee," *or* (2) "according to ordinary business terms." 11 U.S.C. §

---

[4] In its response to this appeal, Saint Catherine claims that the "ordinary course of business" exception is not properly before the Court because FSSA did not argue the issue in opposition to summary judgment below, and did not raise the issue on appeal. Both assertions are incorrect. FSSA raised the issue in its opposition to summary judgment, *see* Docket No. 24 at 11–12, and the Bankruptcy Court explicitly considered it in its ruling. Docket No. 29 at 7. FSSA also designated the issue in its "Statement of Issues on Appeal." *See* Docket No. 35 at ¶ 1A. There is no obstacle to our consideration of the question.

[5] The statute also requires that the transfer in question enable the creditor to receive more than it would have received if (1) it were a Chapter 7 rather than Chapter 11 bankruptcy, (2) the transfer had not been made, and (3) the creditor "received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5). FSSA raised an argument under this subsection in opposition to summary judgment below, but the Bankruptcy Court declined to consider the argument on the grounds that it was untimely raised. Docket No. 29 at 6–7. FSSA has not raised § 547(b)(5) on appeal.

547(c)(2) (emphasis added). The creditor bears the burden of showing that a transaction occurred in the ordinary course of business. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 390 (7th Cir. 1997). We conclude that FSSA fails to meet its burden because it has not shown that Saint Catherine incurred the HAF obligation in the ordinary course of business; we thus need not consider the additional two-pronged test.

The ordinary course of business exception is intended to "protect recurring, customary trade transactions, but not one time payments in settlement of contractual claims." *In re Intercontinental Publ'ns, Inc.*, 131 B.R. 544, 550 (Bankr. D. Conn. 1991) (citing *Energy Co–op, Inc. v. SOCAP Int'l, Ltd.,* 832 F.2d 997, 1004 (7th Cir.1987)). In *Energy Co-op, Inc. v. SOCAP International, Ltd.,* 832 F.2d 997 (7th Cir. 1987), the Seventh Circuit noted that Congress enacted § 547(c)(2) "to leave undisturbed normal financial relations . . . . In other words, § 547(c)(2) protects 'ordinary trade credit transactions that are kept current.'" 832 F.2d at 1004 (citing *Barash v. Pub. Fin. Corp.*, 658 F.2d 504, 511 (7th Cir. 1982)). There is a first time for everything, and Seventh Circuit precedent establishes that the fact that a particular type of debt has been incurred for the first time does not necessarily mean that it is outside the ordinary course of business; evidence can establish that debtor and creditor are laying the foundation for a new course of dealing. *Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642–643 (7th Cir. 2003) (concluding that a history of like transactions is not "absolutely necessary in every case"); *Warsco v. Household Bank F.S.B.*, 272 B.R. 246, 251 (Bankr. N.D. Ind. 2002). However, a "one time" transaction cannot qualify. *See Energy Co–op* , 832 F.2d at 1004. From the perspective of Saint Catherine at the time of its bankruptcy filing, the HAF was a two-time obligation: an

annual assessment levied once in 2012 and again in 2013.[6] FSSA sent Saint Catherine its 2012 HAF bill on May 29, 2012—only 21 days before Saint Catherine filed for bankruptcy, and only a week before FSSA began withholding large sums. The withholdings significantly upset the hospital's week-to-week finances, and their effect on June 5 and June 12, 2012 was to eliminate entirely the Medicaid reimbursements the hospital customarily receives from the state. Docket No. 39 at 45. *Cf. In re Issac Leaseco, Inc.*, 389 F.3d 1205, 1210 (11th Cir. 2002) (noting that the purpose of the exception is to "leave undisturbed normal financial relations, which enables the struggling debtor to continue operating its business"). Because we view the HAF as akin to a tax, we conclude that under these circumstances it did not fit within the mold of Saint Catherine's pre-existing transactional relationship with FSSA. *See In re Pullman Constr. Indus., Inc.,* 190 B.R. 618, 624–626 (Bankr. N.D. Ill. 1996) (holding that the late payment of a tax liability did not constitute ordinary course of business). We therefore AFFIRM the Bankruptcy Court's conclusion that the two pre-petition withholdings constitute avoidable preference payments.

## II.   Status of the Withholdings for the 2013 HAF

On appeal, FSSA urges that the $989,738.78 that FSSA withheld in 2013 to service the fiscal year 2013 HAF should be classified as the collection of a post-petition debt and thus exempt from the automatic stay of collection of pre-petition debts. Appellant's Br. 18–20. We agree.

After a debtor files for Chapter 11 bankruptcy, an automatic stay bars any "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The statute further defines a "claim" as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

---

[6] As FSSA points out, the HAF program has since been renewed for additional years. We do not agree with FSSA that subsequent extension of a tax-like program, however, renders it "customary" as of the time of the debtor's bankruptcy petition.

10

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."
11 U.S.C. § 101(5)(A). In employing this expansive language, "Congress intended . . . to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). While the Seventh Circuit has not definitively weighed in on the matter, the majority rule specifies that a claim arises when the conduct giving rise to it occurs. *See Aldrich v. Papi,* 427 B.R. 457, 465 (Bankr. N.D. Ill. 2010) (collecting cases, noting that "a majority of courts follow the conduct theory, under which the date of a claim—and the corresponding debt owed to the creditor—is determined by the date of the conduct giving rise to the claim"). Bankruptcy Courts within the Seventh Circuit have adopted this "conduct theory," *see Aldrich,* 427 B.R. at 465; *In re Bonnett,* 158 B.R. 125, 127 (Bankr. C.D. Ill. 1993), and the Bankruptcy Court below did so as well. Docket No. 29 at 9. Both parties on appeal have framed their briefing around the conduct theory, which we also adopt. *See* Appellant's Br. 18–19; Appellee's Resp. 14 ("The Second HAF is . . . a pre-petition claim because the conduct giving rise to the claim . . . occurred pre-petition."). The question before us, then, is what conduct by FSSA or Saint Catherine gave rise to FSSA's claim for the 2013 HAF.

> The Bankruptcy Court concluded as follows in answering this question:
>
> [T]he HAF was assessed on Saint Catherine based on Saint Catherine's pre-petition activities—those from the hospital cost reports from May 1, 2010, to April 30, 2011, and other financial information on file as of February 28, 2012. The HAF is not like a tax or a fee that arises based on a debtor's post-petition continued operations. The Court therefore concludes the Second HAF is a pre-petition claim.

Docket No. 29 at 9. Saint Catherine expands on this point, noting that three different events that could be conceived as triggering the claim—"the enactment of Section 281, the cost reporting period, and the approval of the HAF by CMS"—all occurred before Saint Catherine filed for

11

bankruptcy. Appellee's Resp. 14. FSSA retorts that the HAFs for fiscal years 2012 and 2013 were separate assessments, and that the triggering "conduct" for Saint Catherine's liability was its continued operation as an acute care hospital on July 1, 2012, the first day of the 2013 HAF assessment period. Appellant's Br. 20.

As we have noted above, we disagree with the Bankruptcy Court's foundational assumption that the HAF cannot be analogized to a "tax or a fee." *Cf.* Docket No. 29 at 9. Moreover, while the amounts owed for the 2012 and 2013 HAFs were set prior to the petition date, we agree with FSSA that the HAF is an annual assessment triggered by a hospital's eligibility at the beginning of a given assessment period. In support of this interpretation, we note that FSSA issued separate annual bills to Saint Catherine, and that the statement for the 2013 HAF was not delivered until July 18, 2012—roughly a month after the petition date. *See* Docket No. 29 at 3. While the total "fee period" for the program may have spanned two years, the notices sent to Saint Catherine each identified a "Hospital Assessment Fee Period" of a single year corresponding to the hospital's fiscal year of July 1 to June 30. *See* Docket No. 1, Exs. 1; 10. In testimony before the Bankruptcy Court, Saint Catherine CEO Merlyn Knepp described the debt similarly, noting that it was divided into two one-year parts. *See* Docket No. 39 at 9.[7]

Provider Bulletin BT201217, which announced the HAF assessments, buttresses the notion that the annual fee is triggered by a hospital's ongoing eligibility for the program. *See* Docket No. 26, Ex. 2. The Bulletin first explains that only those hospitals licensed under Indiana Code § 16-21-2 are eligible to pay the fee; it further advises that any hospital that loses its

---

[7] Knepp's exact testimony was as follows.

Q[uestion] Okay. And for what period of time was this assessment fee supposed to take place?

 [Answer by Knepp]: Well, the period of time it was supposed to cover was from July 1, 2011 to June 30th, 2012, and the second year was July 1, 2012 to June 30th, 2013. Docket No. 39 at 9.

eligibility must notify the state agency within 30 days. *Id.* at 2. Although the Bulletin does not say so explicitly, we agree with FSSA's assertion that, if Saint Catherine had ceased to be an eligible acute care hospital before July 1, 2012, then it would have no liability for the fiscal year 2013 HAF. We therefore conclude that the "conduct" triggering the liability was Saint Catherine's continued operation as an eligible hospital on that date. The 2013 HAF is thus a post-petition debt not subject to the automatic stay pursuant to 11 U.S.C. § 362(a)(6), and we REVERSE the Bankruptcy Court's contrary conclusion.

### III. Status of the post-petition withholdings for the 2012 HAF

With respect to those post-petition withholdings that both parties concede were in service of the pre-petition claim for the 2012 HAF—namely, the $159,053.24 withheld on June 19 and June 26, 2012—FSSA argues that it was engaged in permissible recoupment which should be considered exempt from the automatic stay.[8] We agree with the Bankruptcy Court that the doctrine of recoupment is inapposite here.

In bankruptcy cases, payments or collections that fall under the equitable doctrine of recoupment may be exempt from the automatic stay established by 11 U.S.C. § 362. *In re CDM Mgmt. Servs., Inc.,* 226 B.R. 195, 197 (Bankr. S.D. Ind. 1997) (citing *Reiter v. Cooper,* 507 U.S. 258, 265 n.2 (1993)). There are two limitations on the doctrine of recoupment: "First, the claims must arise from a single contract or transaction." *Id.* (citing *In re Am. Sunlake Ltd. P'ship,* 109 B.R. 727, 730 (Bankr. W.D. Mich. 1989)). "Second, there must be some type of 'overpayment' whether accidentally made or contractually made." *Id.* (citing *In re Pub. Serv. Co. of N.H.,*107 B.R. 441, 445 (Bankr. D.N.H. 1989)).

---

[8] FSSA contends that all post-petition withholdings, including those for the 2013 HAF, qualify as recoupments. Since we have already concluded that the 2013 HAF withholdings are not subject to the automatic stay, however, we now address only the *post-petition* withholdings to service *pre-petition* debt.

Consistent with the interpretation of the HAF that we have previously discussed, we do not see the imposition of this annual assessment as part of the same "contract or transaction" as Saint Catherine's existing running account with the FSSA. The Seventh Circuit is among the courts that have held that, under certain circumstances, a creditor may recoup a pre-petition overpayment for Medicaid services by withholding—underpaying—a portion of a post-petition Medicaid reimbursement. *See In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 955–956 (7th Cir. 2003); *see also In re CDM,* 226 B.R. at 197. In its decision in *In re Doctors Hospital of Hyde Park, Inc.*, 337 F.3d 951 (7th Cir. 2003), however, the Seventh Circuit drew a distinction highly applicable to this case. The court affirmed that a state agency could recoup past Medicaid overpayments out of subsequent Medicaid reimbursements to a hospital; however, recouping an unrelated *tax* debt by withholding portions of Medicaid reimbursements was a different matter. *See* 337 F.3d at 954–955. "[T]he taxes are an unrelated debt of the hospital to the state, and while the Medicaid contract could have contained a provision expressly entitling the state to set off any taxes the hospital owed it against any Medicaid payments that it owed the hospital, it did not." *Id.*[9] Similarly, the Southern District of Indiana in *In re CDM Management Services, Inc.,* 226 B.R. 195 (S.D. Ind. 1997), concluded that a series of Medicaid claims constituted a "single integrated transaction" for purposes of recoupment, but the court distinguished its holding from cases in which a state agency sought to withhold Medicaid payments to recoup past overpayments pursuant to separate, yearly contracts between the same parties. *See In re CDM*, 226 B.R. at 197. *Cf. In re Univ. Med. Ctr.,* 973 F.2d 1065, 1080 (3d Cir. 1992); *In re Dartmouth House Nursing Home, Inc.*, 24 B.R. 256, 261–263 (Bankr. D. Mass. 1982).

---

[9] The *In re Doctors Hospital* court ultimately held that a setoff of the tax liability was permissible under an Illinois statute, the Comptroller Act, which establishes the right of a state agency to set off any debt owed it by a debtor against any amount it owes the debtor. 337 F.3d at 953. The parties have directed our attention to no such Indiana statute that provides an analogous right.

We agree with the Bankruptcy Court that the HAF is distinct from the "ongoing stream of services, advances, and reconciliations" that exists between FSSA and Saint Catherine as a Medicaid provider. *Cf. In re Dist. Mem'l Hosp. of Sw. N.C.*, *Inc.*, 297 B.R. 451, 457 (Bankr. W.D.N.C. 2002). Recoupment is an equitable doctrine, which in the context of bankruptcy can be used to prevent a debtor's bankruptcy petition from cutting off an ongoing transaction midstream and leaving a creditor no means of redressing a past overpayment. *See, e.g., In re Holyoke Nursing Home, Inc*., 372 F.3d 1, 4–5 (1st Cir. 2004); *In re Delta Air Lines,* 359 B.R. 454, 461–462 (Bankr. S.D.N.Y. 2006). Even if the HAF and the normal flow of Medicaid reimbursements between FSSA and Saint Catherine constituted a "single integrated transaction," FSSA cannot show that its exercise of recoupment serves to remedy an "overpayment." While it is true that the HAF was used to support higher reimbursement rates to hospitals, any benefit that Saint Catherine stood to receive from the arrangement was prospective. FSSA's argument that Saint Catherine had been "overpaid" by becoming eligible for increased reimbursements puts the cart before the horse. The HAF withholdings were front-loaded, and they had sufficient magnitude that they negated any gains to Saint Catherine brought by increased reimbursement rates; the hospital would only realize the benefit from the HAF program later, once it had paid its assessment. *See* Docket No. 34 at 45.

FSSA points to no case law supporting its notion of recoupment as a remedy of *future* overpayment. In fact, both the cases FSSA cites authorize post-petition recoupment of Medicaid reimbursements to remedy pre-petition Medicaid reimbursement overpayments. *Cf. In re Stratman,* 217 B.R. 250, 253 (Bankr. S.D. Ill. 1998); *In re CDM,* 226 B.R. at 197. Here, FSSA does not claim that it overpaid Saint Catherine prior to the withholdings, and we decline FSSA's invitation to stretch the meaning of the term "overpayment" to an extent unsupported by

15

precedent. We therefore AFFIRM the ruling of the Bankruptcy Court with respect to the post-petition withholdings in service of the 2012 HAF.

## Conclusion

We agree with the Bankruptcy Court that the withholdings FSSA made from Medicaid reimbursements to satisfy Saint Catherine's pre-petition debt should not be exempt from either the rule regarding preference payments pursuant to 11 U.S.C. § 547 or the automatic stay pursuant to 11 U.S.C. § 362(a)(6). Our only disagreement with the Bankruptcy Court stems from our conclusion that the 2013 HAF is a post-petition debt and therefore not subject to the automatic stay.

We therefore REVERSE the Bankruptcy Court's grant of injunctive relief against FSSA, to the extent that the court's order enjoined efforts to collect the 2013 HAF. We also REVERSE the Bankruptcy Court's entry of judgment against FSSA in the amount of $989,738.78 for amounts withheld by FSSA to satisfy the 2013 HAF obligation. We AFFIRM the order of the Bankruptcy Court in all other respects. The matter is REMANDED to the Bankruptcy Court for entry of a judgment consistent with this holding.

IT IS SO ORDERED.

Date: _____05/30/2014_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

16

Distribution:

Peter M. Gannott
GANNOTT LAW GROUP
pgannott@gannottlaw.com

Heather M. Crockett
INDIANA ATTORNEY GENERAL
heather.crockett@atg.in.gov

Maricel E.V. Skiles
INDIANA ATTORNEY GENERAL
maricel.skiles@atg.in.gov

David Marcus Cantor
SEILLER WALTERMAN LLC
cantor@derbycitylaw.com

James Edwin McGhee, III
SEILLER WATERMAN LLC
mcghee@derbycitylaw.com